1809.

*Pittsburg,
Friday,*
September 15.

CAMPBELL *against* SPENCER.

THIS was an appeal from the decision of Mr. Justice *Yeates* at the *Somerset* Circuit Court in *October* last.

It was on action of ejectment, in the form prescribed by the late act of assembly, on the trial of which, the following circumstances appeared in evidence.

The plaintiff and two other persons his intimate friends, sent for the defendant to meet them at a tavern. He came early in the morning, and a pint of bitters having been drunk among them, a barter was proposed between the plaintiff and defendant for the farm of the latter, the premises in the ejectment, a body of about 450 acres, situated near to the new turnpike from fort *Cumberland*, to be paid for by a quantity of store goods belonging to the plaintiff. There was some negotiation as to the terms, but the parties finally arranged the bargain by an article of agreement, by which the defendant sold to the plaintiff the farm in question for 3000 dollars, a part of which not exceeding 500 dollars was to be paid in money, to be applied to the discharge of certain debts and costs of suit due from the defendant to other persons, and the residue was to be paid in store goods, the price of which was to be fixed by two merchants, if the parties could not agree. The defendant was a farmer unacquainted with merchandize, and had a wife and a large family of children with whom he resided on the farm. The plaintiff was a storekeeper. Immediately after the bargain, the defendant wished to annul it, but he was told it would be child's play, and that the plaintiff did not make a child's bargain, but would stick to the article. The succeeding night he was much distressed, and said he had ruined his family; and on the following morning he applied to the plaintiff to let him off, who refused. For some days afterwards he was undecided as to his course, but he finally told the plaintiff that he was determined not to adhere to the bargain; and before the bringing of the action, he offered to submit to arbitration the damages to be paid for the breach of contract. The plaintiff, after the contract, paid a small sum of money on account of the defen-

*The plaintiff brought his ejectment upon an equitable title, which although perhaps not unfairly obtained from the defendant, was accompanied by some suspicious circumstances, and at all events was very indiscreetly bartered away by the defendant. The jury, although instructed that the contract was lawful, found a verdict for the defendant, which the court refused to set aside.*

dant's debts; but whether the payment was made before or after the defendant had refused performance, was not very clear. Some evidence was offered to shew that the defendant had been sent for to the tavern by the plaintiff, and that in the course of the business he told the defendant that nothing but the sale could save his land from execution; but a witness swore that one of the other persons sent for him with a view to purchase some of his cattle. There was testimony also as to the value of the land, which the defendant's witnesses thought was worth 3750 dollars, and the plaintiff's about 2700 dollars.

His Honour Judge *Yeates* told the jury that there was nothing in the evidence which would authorize the court to say that the contract was void, however indiscreet it might have been on the part of the defendant; but the evidence was for their consideration. The jury however found a verdict for the defendant, which upon a motion for a new trial was set aside, and it was from this decision that the defendant appealed.

*Woods* for the defendant argued, that this was not a case in which the court should interfere with the verdict. The jury had found for the defendant; on what ground could not be precisely ascertained; but it should be presumed to have been upon such a ground as they were entitled to take. Even if they thought the contract altogether void, the case was of such a character as to justify them in that opinion. The facts taken together shewed that the defendant was not in a situation to give that free assent which is essential to the validity of a contract; and that he was circumvented and entrapt into the bargain. To send for a farmer to a tavern, and there amidst drinking to persuade him into a barter of the farm upon which his family were maintained, for a store of goods of the value and management of which he was wholly ignorant, at first blush excites a suspicion of design. The suspicion is strengthened by the evidence that the bargain was suggested as the only means of avoiding execution, and also by the instant repentance of the defendant. However the court might say before the cause had gone to the jury, that there was nothing, upon which they could declare the contract void, yet the complexion of the

case is very much altered by the verdict. The jury had the whole evidence before them, and might believe those parts exclusively which went to shew circumvention, ignorance, or surprize. Ignorance and error either in fact or law are impediments of assent. 1 *Fonbl.* 106. An agreement founded upon mistake, or produced by circumvention and fraud, or by false suggestions, is invalid; 1 *Fonbl.* 111. 113; and surely the nature and circumstances of the bargain, warranted the jury in the opinion that there was both ignorance and surprize on the part of defendant, and circumvention and false suggestions by the plaintiff. But whether the contract be void or not, at all events it is a case in which the court should be neutral. It is in the first place a verdict for the defendant in ejectment, in which the court very rarely grant a new trial. *Lessee of Clymer* v. *Littler* (a). It is a hard case upon the defendant, and in such cases new trials are not granted. *Reavely* v. *Mainwaring* (b). It is a case in which substantial justice, if it is not already done, may be obtained in another way, as in an action for breach of the contract; and this is a further objection to a new trial. *Goodtitle* v. *Bailey* (c). That the verdict was against the judge's opinion, is not a sufficient reason for granting a new trial; 1 *Wils.* 22; particularly where the plaintiff has received no substantial injury. *Burton* v. *Thompson* (d). And in this case, the injury, if he received any, was the consequence of his own perverseness in paying money after he knew the defendant's intention. It is finally a case in which the plaintiff has not this kind of remedy by the common law; he comes to the equity powers of this court to obtain in effect a specific performance; and such powers were never exercised upon such an occasion.

*S. Riddle* for the plaintiff contended, that however doubtful might be the precise ground upon which the jury proceeded, it was most probable that they thought the contract was void, for upon hardly any other ground could they have found a verdict for the defendant; but they were equally wrong if they were of opinion that the defendant had a right to renounce the contract paying damages. There cannot be

(a) 1 *W. Bl.* 348.    (b) 3 *Burr.* 1306.    (c) *Cowp.* 601.    (d) 2 *Burr.* 664.

any reasonable suggestion of fraud, falsehood, or ignorance in the case. The defendant was not intoxicated. He was not sent for by the plaintiff with a view to the barter, but by the others to purchase his cattle; and he made the bargain, however indiscreetly, at least with adequate deliberation. To invalidate such a contract by such evidence, is to introduce a new rule in equity, that no bargain shall be specifically executed, which gives a greater benefit to one than to the other party. The defendant may not have known the value of merchandize; but this was immaterial, as the price was to be settled by reference. The price at which his farm was taken was high; at least it was a fair price, as it was considerably higher than the estimate of the plaintiff's witnesses. In what way then does circumvention shew itself. The defendant repented; and thousands of valid contracts produce repentance. There was no time for consideration asked, and there was no surprize which made consideration necessary. The most that can be said is that the contract was not made with as much discretion as it ought to be; but this is no ground for setting it aside. 1 *Fonbl.* 114. " It is not suffi-
" cient to set aside an agreement in equity, to suggest weak-
" ness and indiscretion in one of the parties who has engaged
" in it; for supposing it to be in fact a very hard and uncon-
" scionable bargain, if a person will enter into it with his
" eyes open, equity will not relieve him upon this footing
" only, unless he can shew fraud in the party contracting with
" him, or some undue means made use of to draw him into
" such an agreement." *Willis* v. *Jernegan* (a). The plaintiff does not ask any thing of the court, which it is at liberty to deny him. He is entitled to maintain his ejectment upon an equitable title, as well as upon a legal one. All he asks is the just effect of his contract, not a special interposition of the court; for it can never be called a special interposition, when the court are asked to set aside a verdict against law and evidence. The refusal turns the plaintiff to a new action, great delay, and additional costs; whereas a new trial does not change possession, nor in any manner weaken the defendant's case.

(a) 1 *Atk.* 251.

TILGHMAN C. J. The plaintiff in this case, stands in the situation of a person applying to a court of equity, for a decree to compel the specific performance of a contract for the purchase of two tracts of land from the defendant. I agree with Judge *Yeates*, before whom the cause was tried, that there is nothing in the evidence reported by him, which would authorize the court to say that the contract was void. The plaintiff might undoubtedly support an action for damages for breach of the agreement. But a contract may be binding at law, and yet a court of equity may not think it reasonable to decree a specific performance. If this case had been brought before me as a chancellor, I should have felt considerable difficulty in forming a decision. [Here the Chief Justice gave the preceding statement of the facts, and then proceeded as follows.] I have said that as a chancellor, I should feel difficulty on this subject; because although I cannot say the defendant was drunk, or that there is express evidence of an unfair advantage being taken of him, or that the price was very inadequate, yet there are circumstances in this transaction, which I do not like. I do not like the sending for a man to a tavern, and bargaining for the land which supported his family, amidst the drinking of bitters early in the morning; and I do not like a contract by which a *farmer* is involved in the folly of buying a store of goods. If it appeared that the plaintiff had been put to expense or damage, in pursuance of the contract, before the defendant had expressed his resolution to be off, the case would have been much stronger; but quick repentance followed the rash engagement, and of this the plaintiff was informed. I will not say, nor have I made up my mind, how a chancellor ought to decree, under all these circumstances. But that is not precisely the point before us. The jury found for the defendant, which strengthens his case very much. I am now to consider whether that verdict is so clearly wrong, that a new trial should be granted. I do not know on what ground the jury formed their opinion. It is said by the plaintiff's counsel that they undertook to pronounce the contract as altogether void. If that was ascertained on the record, and the case could be reduced to that point, I should have no hesitation in saying that there should be a new trial. But this is impossible. We cannot say on what point the verdict

1809.

CAMPBELL
*v.*
SPENCER.

1809.

CAMPBELL
v.
SPENCER.

was founded. Suppose now the jury were of opinion, that the contract was so far binding, as to make the defendant answerable in an action for *damages*, but that it was not a case, in which the plaintiff was entitled to a specific performance. I then ask myself, whether I am *clear*, that on this ground the jury were wrong. I have thought a good deal of it, and I cannot say that I am. It is one of those cases in which I would not interfere with the verdict, whether it was for plaintiff or defendant. The result of my reflections is an opinion that the verdict should stand; and I am the more inclined to this, as the plaintiff is not concluded by this judgment, but may try the matter once more in a new ejectment.

BRACKENRIDGE J. I cannot dissent from the law as laid down by the Judge who held the Circuit Court upon the trial of this cause, and my understanding of the law would have been given to the same effect in a charge to the jury. But I incline to think my impressions would have been more favourable to the defendant on the equity of the particular case. Be this as it may, I should not have thought myself warranted in setting aside a verdict found by the jury in favour of the defendant. It is impossible on an appeal to have the case so clearly and completely before one, even from the most correct and the fullest notes, as it appeared on the trial; and therefore it ought to be with much hesitation that we depart from what the Judge has thought reasonable in the exercise of his discretion. But it would seem to me that the granting a new trial in this case was not sufficiently distinguished in the mind of the judge, from the granting a new trial where principles of law only were in question. The question in this case resolved itself in a great measure into a question of fact, the fairness, the open dealing, the honesty, of the transaction. When the heart revolts at the inequality of a contract, taking into view the parties, the occasion, and all considerations, there cannot be said to be *equity*. The inequity may be felt where it cannot so well be pointed out. The advantages were all on the side of the plaintiff in this case, on the score of opportunity of information, from his residence, and his occupation as a trading person. I am impressed with the idea of some management to bring about the bargain. It is evident that the plaintiff thought

he had got an advantage, from his unwillingness to allow the least time as a *locus penitentiæ* to the unfortunate vendor. He stuck to his article, he made no child's bargain &c. It was the defendant's place of residence. On quitting possession of an earthly spot where we have lived, who is there who does not cast a " longing lingering look behind." The " *advena possessor agelli*" cannot but affect the mind. Some indulgence to the *resipiscence* of the heart ought to be allowed. Had I been a chancellor, and the case before me as I have it in my mind, I should have hesitated to decree an execution of the contract, but rather have left the plaintiff to his article and to damages.

It is not a case where an individual, on the faith of the contract, has made sale of property in order to raise money, or to change residence. In a case where the conduct of the party was clear of all imputation or suspicion of undue advantage taken, or where he has suffered injury by the causeless and wanton dereliction of an agreement by the party making it, I would be willing to have it carried into effect; and there might be a case, where contrary to the sense of the jury, I might so far insist upon it, as to give the chance of another trial. But I take it, as has been already hinted, that after a verdict, the case is not before the judge, as it was on his delivering his charge. He has the sense of the country against him, which country the jury are, and the sense of the country in a matter of equity. This consists in exceptions to general principles. A sense of right and wrong in the common mind goes a great way to assist the deductions of the understanding. The application of the principle must be wrong, where the feelings of humanity cannot be reconciled to it. In ascertaining the truth of facts, and in weighing the equity arising from them, the law as it is in *Pennsylvania* by the intervention of a jury in an equity case, has the advantage greatly over a decision by a chancellor; and the people are tenacious of it. I admit the filing the petition or bill upon oath, and the answer upon oath by the defendant, are in some cases advantages which we have not; and it has been thought by some advisable to have this given by an act of the legislature; but a jury trial has the advantage of *viva voce* testimony, which is of incalculable moment in the elicitation of truth, and the forming an estimate of the perception, the

1809.

CAMPBELL
v.
SPENCER.

memory, and the grounds of belief in a witness. The ascertaining the equity of a case depends with us upon two tribunals, that of the court and the jury, constituting one forum. Often there are cases where the jury may be considered the most competent; the case before me I think one; and therefore on the trial I should have left it at least as much to them, as the judge did. Under the impressions I now have, I would not have granted a new trial. Had the verdict been for the plaintiff, I should have been more inclined to set that aside, though I would not have done it; but I certainly cannot reconcile it to myself to sanction the setting aside a verdict for the defendant. I think therefore the appeal from the judgment of the Circuit Court ought to be sustained, and that judgment for the defendant ought to be entered.

The above are the ideas which I noted down upon the argument, before I had any intimation from the Chief Justice of the inclination of his mind upon the subject, and at the same time without having it in my power to examine the authorities cited, or to consult others which might be found. But I find myself irresistibly impressed with the idea of circumvention on the part of the plaintiff; and I also take it into view, that the consideration, if I mistake not, was not altogether money, but goods out of the plaintiff's store, the price of the parcels to be fixed; so that the contract does not sound in such certainty, if I may so express it, as to require no arrangement in order to come at the consideration, reduced to money, which was to be paid. As I reflect more upon it, my repugnance grows the stronger to the idea of enforcing the agreement. So far from it, that I take it the damages would be but slight, that a jury would be disposed to give. The plaintiff had in his mind the calculations of the rise of property from a turnpike, which the defendant does not seem to have thought of; and of getting off the remnant of a store, which is not equal to cash even at the invoice prices. I think the bargain therefore hard, and accompanied with such circumstances, as will justify a court in refusing to lend their aid to the carrying it into effect.

Decision reversed and
Judgment for defendant.